1  STEVEN W. MYHRE
   Acting United States Attorney
2  TIMOTHY S. VASQUEZ
   Assistant United States Attorney
3  333 Las Vegas Boulevard South, Suite 5000
   Las Vegas, Nevada 89101
4  (702) 388-6336/Fax: (702) 388- 6418

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>vs.<br><br>SUK HEE CHO,<br>HOON PARK<br>  (a.k.a. "Tom Lee"),<br>IK SOON CHOI, and<br>MI HYE KIM,<br><br>Defendants | THIRD SUPERSEDING<br>CRIMINAL INDICTMENT<br><br>2:04-CR-075-KJD-PAL<br><br><u>Violations</u>:<br>**18 U.S.C. § 1029(a)(1)** - Production, Traffic-In and Use of Counterfeit Access Device(s)<br>**18 U.S.C. § 1029(a)(2)** - Traffic In and Use Of Unauthorized Access Device(s)<br>**18 U.S.C. § 1029(a)(5)** - Fraudulent Transactions with Access Device(s) Issued to Other Person(s)<br>**18 U.S.C. § 1029(b)(1)** - Attempt to Commit Offense Under § 1029(a)<br>**18 U.S.C. § 1029(b)(2)** - Conspiracy to Commit Offense Under § 1029(a) |

**THE GRAND JURY CHARGES:**

<u>COUNT ONE</u>
*Conspiracy to Effect Fraudulent Transactions with Counterfeit Access Devices,
Unauthorized Access Devices, and Access Devices Issued to Other Persons*

During the one-year period from March 2003 through February 2004, in the State and Federal District of Nevada and elsewhere within the jurisdiction of this Court,

**SUK HEE CHO,
HOON PARK,
IK SOON CHOI, and
MI HYE KIM,**

the defendants herein, unlawfully, knowingly, willfully and with intent to defraud, combined, conspired, and agreed with one another and others known and unknown (including **JIN YOUNG BAE,**

HARRY OH, SUNG KOO LEE, DAVID KIM, JAE KWAN KIM, YOUNG SON, YONG AM KIM, YOUNG SOOK LIM, HAN BAIK CHO, and JI HYEUN MIN), to commit offenses under Title 18, United States Code, Section 1029(a), that is: to produce, traffic in, and use one or more counterfeit access devices, in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 1029(a)(1); to traffic in and use one or more unauthorized access devices, in and affecting interstate and foreign commerce, to obtain United States currency and other things of an aggregate value greater than one thousand dollars ($1,000) within a one year period in violation of Title 18, United States Code, Section 1029(a)(2); and to effect transactions in and affecting interstate and foreign commerce with one or more access devices issued to other persons to receive payment or other things of an aggregate value greater than one thousand dollars ($1,000) within a one year period in violation of Title 18, United States Code, Section 1029(a)(5).

## Objects and Means of the Conspiracy

The defendants and others combined for the common purposes of enriching themselves through, among other things, the fraudulent use of counterfeit and unauthorized credit cards and debit cards containing account numbers and identifiers that had been issued to other persons. The conspirators used such access devices to effect fraudulent transactions through which they obtained United States currency and other things of value. Certain members of the conspiracy additionally used false or fraudulently obtained identification documents to shield themselves from law enforcement intervention.

Towards these ends, the conspirators acquired counterfeit credit cards and false or fraudulently obtained identification documents. While the names or aliases of designated conspirators were imprinted on the counterfeit credit cards, these counterfeit credit cards contained or included one or more access devices, to wit: account numbers and electronic identifiers of credit cards, that had been issued to other persons. Organized in teams, designated conspirators used counterfeit credit cards to fraudulently charge cash advances on the credit card account numbers incorporated in the counterfeit cards, while other members of these teams would supervise the activities and provide logistical support

and counter-surveillance against casino security and law enforcement. These teams traveled from Los Angeles, California, to casinos in California and Nevada, where they used counterfeit credit cards to fraudulently charge and attempt to charge cash advances against the credit card account numbers incorporated in the counterfeit credit cards.

## Conduct in Furtherance of the Conspiracy

In furtherance of the conspiracy, the defendants combined to use counterfeit credit cards to effect multiple fraudulent transactions in Nevada and California during the one-year period from March 2003 through February 2004, including the following acts.

1. **SUK HEE CHO, JIN YOUNG BAE** and **HARRY OH** organized and managed the activities of the members of the conspiracy.

2. As part of the conspiracy, **JIN YOUNG BAE** acquired stolen or "skimmed" credit card account numbers and identifiers of credit cards issued to other persons. **JIN YOUNG BAE** manufactured counterfeit credit cards that incorporated these access devices; **JIN YOUNG BAE** manufactured counterfeit credit cards by embossing stolen or skimmed account numbers and recording electro-magnetic identifiers on plastic credit card blanks.

3. **JIN YOUNG BAE** delivered counterfeit credit cards to **SUK HEE CHO** and other conspirators. These counterfeit credit cards included or contained one or more access devices issued to other persons, to wit: credit card account numbers and electronic identifiers that had been issued to other persons. However, in place of the names of the persons to whom the credit card account numbers and identifiers had been issued, the names or aliases of members of the conspiracy were imprinted on the counterfeit credit cards. Thus, while the counterfeit credit cards bore account numbers and identifiers of genuine credit cards issued to other persons, the names or aliases of designated conspirators or "runners" appeared on these counterfeit cards instead of the names of the authorized users of the credit card accounts.

4. As part of the conspiracy, **SUK HEE CHO** and **HARRY OH** coordinated the acquisition and distribution of counterfeit credit cards, ensuring that the name or alias of the conspirator

3

designated to use each particular access device was imprinted on the counterfeit credit cards allotted to that individual.

5. As part of the conspiracy, designated members of the conspiracy (often referred to as "runners") traveled to casinos in Nevada and California with the counterfeit credit cards imprinted with their respective names or aliases. In order to use cards imprinted with aliases, the conspirators procured false or fraudulently-obtained identification documents for purposes of concealing their true identities and personal information.

6. Organized in teams, the runners were typically accompanied by at least one other member of the organization to ensure that all proceeds are accounted for, and to provide counter-surveillance against law enforcement and casino security. **SUK HEE CHO, HARRY OH, and DAVID KIM,** each escorted runners to casinos during the one-year period from March 2003 through February 2004.

7. The runners and their escorts attempted to charge, and did charge, cash advances against the credit card account numbers incorporated in the counterfeit credit cards at automated machines situated within casinos in Nevada and California. Rather than disbursing cash, these machines dispensed checks or vouchers. The runners endorsed these checks and attempted to redeem them, and did redeem them, for United States currency from the casinos' cashiers.

8. During the period from March 2003 through February 2004, **HARRY OH, SUNG KOO LEE, DAVID KIM, HOON PARK, JAE KWAN KIM, YOUNG SON, IK SOON CHOI, MI HYE KIM, YONG AM KIM, YOUNG SOOK LIM, HAN BAIK CHO, JI HYEUN MIN,** and others known and unknown, served as runners, and used counterfeit credit cards to effect and attempt to effect fraudulent transactions to obtain thousands of dollars of United States currency for the conspiracy. For example:

   (a) On the night of August 14-15, 2003, **YONG AM KIM** (using the alias "Jay Sung Lee") and **YOUNG SOOK LIM** traveled to Las Vegas, Nevada, with 31 counterfeit credit cards that they intended to use at casinos to fraudulently charge cash advances.

4

Although **YONG AM KIM** and **YOUNG SOOK LIM** were prevented from using all of these counterfeit credit cards, they successfully effected 7 transactions at several casinos that evening in which they charged cash advances in the aggregate sum of $14,000 (plus service charges and fees) on credit card account numbers incorporated in the counterfeit cards.

(b) On September 11, 2003, **HARRY OH, YOUNG SON** and another man, traveled from Los Angeles, California, to Las Vegas, Nevada, for purposes of using counterfeit credit cards to obtain United States currency at casinos in Las Vegas, Nevada. This team charged and attempted to charge cash advances on counterfeit credit cards at several casinos in Las Vegas, Nevada. Although several of their attempts were unsuccessful, this team succeeded in fraudulently charging $11,000 (plus service charges and fees) on credit card account numbers incorporated in counterfeit credit cards. At the conclusion of the evening's work, **OH, SON**, and their companion, drove to a restaurant in Las Vegas, Nevada, where they met with **SUK HEE CHO** and other members of the conspiracy who had also traveled from Los Angeles to Las Vegas.

(c) On September 13, 2003, **HARRY OH** and another man attempted to charge cash advances on counterfeit credit cards at 3 casinos in Las Vegas. After successfully obtaining $2,000 at the Rio, **OH** and the other man proceeded to the Aladdin where they were unable to charge any cash advances because the automated machine wasn't working properly. The two-man team then attempted to charge a cash advance at the Paris Casino where, after receiving a draft or check from the automated machine, they abandoned the counterfeit credit card and identification documents at the cashier cage and fled the casino.

(d) On September 18, 2003, **SUK HEE CHO** and several other members of the organization drove from Los Angeles, California, to Las Vegas, Nevada, in 2 vehicles. Upon arriving in Las Vegas, both vehicles stopped at a Las Vegas restaurant. Following this

5

brief respite, **DAVID KIM, HOON PARK** (using the alias "Tom Lee"), **JAE KWAN KIM, MI HYE KIM,** and **IK SOON CHOI,** and another man, proceeded to downtown Las Vegas. After arriving downtown, **JAE KWAN KIM** unsuccessfully attempted to charge a cash advance on a counterfeit credit card at the Horseshoe Casino where he abandoned his identification and the counterfeit credit card. **IK SOON CHOI**, abetted by **DAVID KIM, HOON PARK,** and **MI HYE KIM,** charged a $2,000 cash advance on a counterfeit credit card at the Fremont Hotel and Casino. The team then moved to the Horseshoe Casino where **MI HYE KIM,** abetted by **DAVID KIM, IK SOON CHOI,** and **HOON PARK,** attempted to fraudulently charge a cash advance on a counterfeit credit card. A delay at the cashier's window led the conspirators to abandon **MI HYE KIM's** identification and counterfeit credit card and to flee the casino. These four conspirators moved to the Circus Circus casino where **IK SOON CHOI** and **MI HYE KIM,** abetted by **DAVID KIM** and **HOON PARK,** each used counterfeit credit cards to obtain cash-advance checks. **IK SOON CHOI** successfully cashed a check for $2,000. However, **MI HYE KIM** and **DAVID KIM** abandoned her identification and the counterfeit credit card at the cashier cage. This team of runners was thereafter detained and multiple additional counterfeit credit cards were found in their possession.

(e) On September 26-28, 2003, **SUNG KOO LEE** (using the alias "Junghee Shim") and **JAE KWAN KIM** (using the alias "Jae Min Kim") used counterfeit credit cards to charge and attempt to charge 36 cash advances on counterfeit credit cards in and around Reno, Nevada.

(f) On October 4, 2003, **SUNG KOO LEE** (using the alias "Junghee Shim") and **JAE KWAN KIM** each attempted to charge cash advances on counterfeit credit cards at Fitzgerald's Casino in Reno. After **SUNG KOO LEE** successfully endorsed a $2,000 cash-advance check at the cashier's cage, casino security observed him hand this money to **JAE KWAN KIM.** When **JAE KWAN KIM** subsequently attempted to cash a

6

Case 3:25-mj-00708-KFR   Document 1   Filed 11/03/25   Page 6 of 10

separate cash-advance check, he was questioned by casino employees and fled from the casino, abandoning the counterfeit credit card and his identification documents.

    (g) On October 7, 2003, **HARRY OH** provided 27 counterfeit credit cards to other persons in Las Vegas, Nevada, with the intent that these individuals would use the counterfeit cards to effect fraudulent transactions. Under **HARRY OH**'s supervision, these other individuals used the counterfeit credit cards to fraudulently charge and/or attempt to charge cash advances against the credit card account numbers embedded in the counterfeit cards.

    (h) On October 22, 2003, at the El Dorado Casino in Reno, **JAE KWAN KIM** attempted to charge a cash advance on the credit card account number embedded in a counterfeit credit card a counterfeit credit card at the El Dorado Casino in Reno.

    (i) On February 11, 2004, **HAN BAIK CHO** and other conspirators used counterfeit credit cards to charge and attempt to charge thousands of dollars of cash advances at casinos in Las Vegas, Nevada, to attempt to fraudulently obtain thousands of dollars of United States currency.

    (j) On February 13, 2004, at the Treasure Island Casino in Las Vegas, Nevada, **JI HYEUN MIN** attempted to use a counterfeit credit card in an attempt to fraudulently charge a cash advance in the sum of $750.00 on the credit card account numbers incorporated in the counterfeit card..

9. Financial records reveal that during the one-year period from March 2003 through February 2004, the participants in the conspiracy led by **SUK HEE CHO** produced, trafficked in, and used scores of counterfeit credit cards containing account numbers and identifiers issued to other persons to fraudulently effect and attempt hundreds of cash advances. Members of the conspiracy would additionally use counterfeit and unauthorized access devices to purchase goods and services.

. . .

7

10. As part of and in furtherance of the conspiracy, the conspirators traveled and transported counterfeit access devices in interstate commerce from California to Nevada. Many of the account numbers incorporated in the counterfeit credit cards had been issued by banks doing business in other states and foreign countries. Additionally, the fraudulent transactions themselves occurred in the interstate and international electronic banking system and affected interstate and foreign commerce.

11. In this manner, the conspirators attempted and effected transactions with credit cards, credit card account numbers, and other access devices issued to other persons, to fraudulently obtain or attempt to obtain United States currency and other things of an aggregate value greater than one thousand dollars ($1,000) within periods of less than one year. and purchases of a value in excess of one million dollars.

All in violation of Title 18, United States Code, Section 1029(b)(2).

**COUNT TWO**
*Production, Traffic In, and Use*
*of Counterfeit Access Devices*

From on or about March 2003, through May, 2005, in the State and Federal District of Nevada and elsewhere within the jurisdiction of this Court,

**SUK HEE CHO,**
**HOON PARK,**
**IK SOON CHOI,** and
**MI HYE KIM,**

the defendants herein, aiding and abetting one another and others known and unknown, knowingly and with intent to defraud, attempted to and did produce, traffic-in, and use, one or more counterfeit access devices, to wit: one or more counterfeit credit cards, in and affecting interstate and foreign commerce.

All in violation of Title 18, United States Code, Sections 1029(a)(1) and 1029(b)(1).

. . .

. . .

## COUNT THREE
*Traffic In and Use*
*Of Unauthorized Access Device(s)*

During the one-year period from March 2003 through February 2004, in the State and Federal District of Nevada and elsewhere within the jurisdiction of this Court,

**SUK HEE CHO,**
**HOON PARK,**
**IK SOON CHOI,** and
**MI HYE KIM,**

defendants herein, aiding and abetting one another and others known and unknown, knowingly and with intent to defraud, attempted to and did traffic in and use one or more unauthorized access devices, to wit: credit card account numbers and identifiers that had been lost, stolen, or obtained with intent to defraud, to obtain United States currency and other things of an aggregate value greater than $1,000, in and affecting interstate and foreign commerce. All in violation of Title 18, United States Code, Sections 1029(a)(2) and 1029(b)(1).

## COUNT FOUR
*Fraudulent Transactions with*
*Access Devices Issued to Other Persons*

During the one-year period from March 2003 through February 2004, in the State and Federal District of Nevada and elsewhere within the jurisdiction of this Court,

**SUK HEE CHO,**
**HOON PARK,**
**IK SOON CHOI,** and
**MI HYE KIM,**

defendants herein, aiding and abetting one another and others known and unknown, knowingly and with intent to defraud, attempted to and did effect transactions with one or more access devices issued to other persons, to wit: credit card account numbers and identifiers issued to other persons, to receive payment or other things of an aggregate value greater than $1,000 during the one-year period from

March 2003 through February 2004, in and affecting interstate and foreign commerce. All in violation of Title 18, United States Code, Section 1029(a)(5) and 1029(b)(1).

**DATED:** this  24  day of April 2007.

**A TRUE BILL:**

                                          /s/
                              FOREPERSON OF THE GRAND JURY

STEVEN W. MYHRE
Acting United States Attorney

TIMOTHY S. VASQUEZ
Assistant United States Attorney